UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| SAILESH NAIK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:05-cv-831 |
| | ) | |
| v. | ) | Hon. Robert Holmes Bell |
| | ) | |
| JO ANN BARNHART, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a Title VII action brought *pro se* by a former employee of the Social Security Administration ("Administration"). Jo Ann Barnhart, Commissioner of Social Security, is the defendant. The Administration employed plaintiff as a Case Technician from June 27, 2004 through June 23, 2005. Plaintiff's complaint alleges unlawful discrimination against him on the basis of race, color, sex, and religion in the denial of the same conditions of employment, public disclosure of his work file, "humiliation," and wrongful termination of his employment. (docket # 1, ¶¶ 8, 9). Plaintiff requests an award of monetary damages and an order of reinstatement. Paragraph 12 of plaintiff's complaint identifies a September 30, 2005 decision of the Administration on Complaint No. 05-0384-SSA as providing him with the right-to-sue letter on the above-described Title VII claims. The Administration dismissed Complaint No. 05-0384-SSA pursuant to 29 C.F.R. § 1614.107(a)(4) because plaintiff had elected a different remedy by raising the same matter through the negotiated grievance process under the collective bargaining agreement. (docket # 1, Ex. 1 at 1-2).

Defendant's motion for summary judgment (docket # 12)¹ is now before me pursuant to 28 U.S.C. §636(B)(1)(B) and Chief District Judge Robert Holmes Bell's order of reference. (docket # 5). Defendant argues that plaintiff's claims are barred by plaintiff's election to proceed under the grievance procedure, and that plaintiff's remaining claims based on the termination of his employment should be dismissed because plaintiff did not exhaust his available administrative remedies. Upon review, I recommend that defendant's motion for summary judgment be granted, and that judgment be entered in defendant's favor on all plaintiff's claims with the exception of plaintiff's employment termination claims. I recommend that plaintiff's employment termination claims be dismissed without prejudice because plaintiff did not exhaust his available administrative remedies as required by law.

**Applicable Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"

---

¹Defendant initially filed a hybrid motion to dismiss or for summary judgment. The court converted the motion into a motion for summary judgment, required defendant to file properly authenticated documents, and established deadlines for submitting additional evidence and arguments. (docket #'s 21, 36). Defendant filed the documents necessary to authenticate defendant's exhibits (docket #'s 22-31), and plaintiff filed his response (docket #'s 38, 39, 40). Defendant's motion for summary judgment is ready for decision.

*State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Tucker v. Union of Needletrades Indus. & Textile Workers*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on

credibility considerations. Instead, the nonmoving party must present evidence to defeat a properly supported motion for summary judgment. The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005).

## Facts

The following facts are beyond genuine issue. On June 27, 2004, The Administration hired plaintiff as a Legal Assistant (OA) Case Technician in the Administration's Grand Rapids Office of Hearings and Appeals. (docket # 13, Ex. O). On March 17, 2005, Group Supervisor Mary E. Austin issued a three-page memorandum to plaintiff regarding problems with his work performance. (docket # 13, Ex. A). The memorandum reviewed plaintiff's date of hire, his probationary employee status, and the training plaintiff had received. It identified individuals who had worked with plaintiff in various attempts to help plaintiff with his workload and organizing the paperwork and files in plaintiff's work area. The memorandum summarized Ms. Austin's January 2005 interaction with plaintiff concerning work performance:

> On January 3, 2005, you an I had a discussion of your performance. At that time I expressed my concerns over the items that I had discovered in your work area. I found mass quantities of unassociated mail dating back to August 2004, two cases (one of which was a dire need case) in which you had completed the CPMS closed inputs in October 2004 but had failed to mail the decisions and the folders to the appropriate recipients, post-hearing actions dating back to October 2004 which had never been initiated, pre-hearing work which you should have given to the appropriate SCT weeks earlier, and numerous CPMS inputs which had never been done.

> Kathy Shafer, various CTs and SCTs, and I cleaned up the most urgent of the problems, and I directed the SCTs in Group A to assist in associating the mail for scheduled and post-hearing cases. Kim Tripp, Group Supervisor, took the unworked (UNWK) status mail (which dated back to November 2004) and ran CPMS records to check the current location for mail association. I left for you a small amount of non-critical mail that would require only a short time for you to process. I directed Kathy Shafer to give you training on associating mail and to assist you in organizing your work area. I provided an extra file cabinet for you and allowed you to expand your work area with the addition of a small table across from your work space. To assist you in getting your workload under control, I told you that you would stop mailing decisions and would no longer file the UNWK mail. I spoke with Judges Finne and Berlin about the case tracking system that you developed which paralleled CPMS, and both judges agreed that your tracking system had to be discontinued so that you could concentrate on making proper CPMS inputs.

(*Id.* at 1-2). Ms. Austin's memorandum went on to describe specific events of March of 2005 that had given rise to her March 17, 2005 memorandum:

> On March 14, 2005, I was searching for an unwritten file which had been missing since January 2005. I discovered unassociated post-hearing mail which dated back to January 2005. The small amount of non-critical mail that would only require a short time for you to process that I gave you on January 3 was in a priority mail box. Most disturbing of all was the case I found tucked away under your desk in which you had closed out the two CPMS records on March 7, 2005, but still had not mailed the file or the unfavorable denial letters to the appropriate recipients. I also found two pre-hearing cases which should have been given to SCT Marc Marsiglia immediately following the hearings. I additionally found two ALJ folders, which appeared to only need filing in the closed ALJ folder drawers. You explained that both required amended hearing or reopening actions. There were no reports of contact or any notes to explain what was needed in either case. Although you had many drawers with scheduled cases in them you had not indicated on any of the drawers what the contents were. [O]n March 14, 2005 I began labeling the drawers and asked that you complete the labeling. On March 15 I discovered three cases in which the development information had not been made to CPMS, and which you then corrected.

(*Id.* at 2). The memorandum then described discussions Ms. Austin purportedly had with plaintiff on March 14, 2005, regarding plaintiff's need for an Individual Development Plan (IDP) if plaintiff wanted to spend his work time furthering his "learning experiences" and "understanding of social security law," his frustration with the number of supervisors, and plaintiff's belief that the problems and mistakes Ms. Austin had identified were minor and could easily be corrected. (*Id.*).

A portion of Austin's memorandum stated as follows:

> Sai, I remain concerned over the disorganization in your workload and the lack of timeliness of case processing actions and CPMS inputs. You are in a probationary period which ends June 26, 2005. An employee can be terminated during the probationary period if he or she is not able to successfully perform his or her critical job elements, as outlined in your position description.

(*Id.* at 2-3). Plaintiff was instructed to develop ideas how to improve his work performance and advised that Group Supervisor Austin would meet with him on March 24, 2005, at 10:00 a.m. to develop a plan. Plaintiff was advised that he could bring his union representative to this meeting. Austin stated that she was unaware of any personal or medical problems that might be affecting plaintiff's work, but her memorandum provided plaintiff with the telephone number for the confidential Employee Assistance Program for plaintiff to contact if he believed that personal or medical problems were affecting his work performance. (*Id.* at 3).

### A. Plaintiff's Grievance and Appeals

On March 31, 2005, plaintiff filed a seven-page grievance addressed to "Ms. Austin, Group Supervisor," and captioned it as a "Grievance to Written Reprimand, dated March 17, 2004, under the Social Security Administration (SSA) and The American Federation of Government Employees Union (Union), AFL-CIO (Contract) Article 24." (docket # 13, Ex. B; *see* National Agreement Between the American Federation of Government Employees AFL-CIO and the Social Security Administration, docket # 13, Ex. N at 157-63).[2] Plaintiff claimed that his supervisor's

---

[2] Article 24, section 8 of the contract specified that a covered employee was required to make an election between the negotiated grievance procedure and the available statutory procedure, but could not do both. It further advised that the employee would be deemed to have exercised his or her option at such time as the employee filed a grievance in writing or filed a written complaint under the statutory EEO procedure, "whichever event occur[ed] first." (docket # 13, Ex. N, § 8, ¶ 2).

-6-

memorandum had been "myopic in its approach" and that he considered it a "violation of both the spirit and the letter of the Contract." (*Id.* at 1). Plaintiff argued that his one-year probationary period should have ended when he had received an increase in pay rate from GS-4 to GS-5. Plaintiff stated that the training he had received was "sporadic, inconsistent and disjointed" and failed to address the backlog of cases, new judges, and new staff. (*Id.* at 2). Plaintiff asserted that Ms. Austin had been required to have conducted their January 3, 2005 discussion in a more private setting. He described Austin's statements concerning what she had found on January 3, 2005 to be "self-serving." (*Id.* at 3). Plaintiff demanded that Ms. Austin produce certain documents "relating to the reprimand." Plaintiff emphasized that he was the only case technician with responsibilities for two judges. (*Id.* at 4). He claimed that Group Supervisor Austin was making him the scapegoat for her own negligent conduct: "I will, of necessity, let others decided whether you were covering up your own neglected responsibilities as you manufactured mine." (*Id.*). He argued that the inadequacies in his work performance, if any, were Ms. Austin's fault: "If, indeed, there are any inadequacies they are a direct consequence of your decision to have me support two judges in two different groups without adequate training and appropriate supervision. A written reprimand, and the threatened performance improvement plan leading to my termination cannot and should not be founded on poor management and your unprofessional conduct." (*Id.* at 5).

On March 31, 2005, Austin acknowledged receipt of plaintiff's grievance. She indicated her March 17th memorandum had been a performance memorandum, not a written reprimand. She further advised plaintiff to note that she would be away on vacation until April 11, 2005. (docket # 13, Ex. C).

On April 12, 2005, plaintiff filed a written request that Ms. Austin produce certain documents under Article 23, section 4 of the collective bargaining agreement. (docket # 13, Ex. D). On April 14, 2005, Austin responded that Article 23, section 4 of the contract did not apply because she had not issued a reprimand. Austin wrote that her memorandum was not a reprimand or disciplinary in nature: "As the memorandum clearly indicates, it summarizes my observations and concerns, as your first line supervisor, with certain areas of your performance during your probationary period, and it requested that you provide input for a plan to assist you in improving your performance before the end of the probationary period." (docket # 13, Ex. E). On Friday, April 15, 2005, Ms. Austin sent an e-mail to plaintiff inquiring whether he desired a meeting with Austin concerning his grievance. Plaintiff replied that he would respond to Austin's inquiry on Monday, April 18, 2005. (docket # 13, Ex. F).

On April 18, 2005, plaintiff initiated a Step II appeal under the grievance procedure. (docket # 13, Ex. G). On April 26, 2005, Hearing Office Director Sue Gilbert sent plaintiff an e-mail regarding his Step II appeal. (docket # 13, Ex. H). Gilbert indicated that it was her understanding that plaintiff wanted to make an oral presentation of his Step II appeal, that plaintiff wanted to speak with his union representative before setting a date for the oral presentation, that plaintiff wanted to submit a written argument to Gilbert concerning his grievance, and that plaintiff would send Gilbert an e-mail response before the close of business on Wednesday, April 27, 2005, if plaintiff had been able to establish a tentative date for his oral presentation or if he needed more time to consult with his union. (docket # 13, Ex. H). There is no evidence that plaintiff made any response to Gilbert.

There is no evidence that plaintiff completed his Step II appeal, or that he exhausted his available administrative remedies under the contract.[3]

### B. Request for EEO Counseling, Formal Complaint, and Dismissal of the Complaint Based on Plaintiff's Election of Remedies

On May 25, 2005, plaintiff submitted a request for EEO counseling. Plaintiff claimed discrimination on the basis of sex (male), race (Indian), and Religion (Hindu). The issues he identified in the request for counseling were assignment of duties, evaluation/appraisal pay, reprimand, retaliation/reprisal, harassment (non-sexual), and training. (docket # 13, Ex. J). At or about this time plaintiff generated an undated document entitled "STATEMENT OF FACTS to "get the EEO process started." (docket # 13, Ex. I). EEO Counselor Gerald Lopatka interviewed plaintiff on June 22 and June 23, 2005. (*Id.*). It does not appear that plaintiff advised Counselor Lopatka that plaintiff had previously filed a grievance and pursued an appeal to Step II. The Notice of Rights form that both plaintiff and Lopatka signed on June 23rd contained an express notice that plaintiff could either elect to file a grievance or file a formal EEO complaint, but he could not do both. (docket # 13, Ex. P). Additional evidence of Counselor Lopatka's lack of knowledge of plaintiff's grievance and Step II appeal is found in section 10 of Lopatka's EEO counseling report (docket # 13, Ex. J at 4, § 10), which erroneously states that plaintiff had not filed a grievance. On

---

[3] Plaintiff was an employee covered by the collective bargaining agreement. (docket # 28, Declaration of Rose Mosely, ¶ 6). Article 24, section 9 of the collective bargaining agreement describes the first 3 steps of the grievance procedure and identifies the official responsible for review at each step. Section 12 of the agreement provides that the absence of a timely response to a grievance the employee is allowed to advance his grievance to the next step. (docket # 13, Ex. N).

June 23, 2005, plaintiff signed a statement, which Lopatka later attached to his report as a "detailed description of the [plaintiff's] complaint":

> The aggrieved alleges that he was discriminated against on the basis of his sex, race and religion by Susan Gilbert, Hearing Office Director; Kim Tripp and Mary Austin, Group Supervisors; and William Decker, Chief Administrative Law Judge by way of harassment, inappropriate reprimand, inequitable assignment of duties and evaluation. Specifically, the aggrieved alleges that the above management officials: (1) Between September 2004 and January 2005 failed to modify his work load as agreed upon by eliminating his responsibility for unworked mail; (2) Between June 2004 and June 2005 permitted a dual supervisory arrangement which regularly involved confused and conflicted work orders; (3) Between June 2004 and June 2005 failed to establish performance standards which would have taken into account the requirement that, unlike his counterparts, he would do the Case Technician work for two and not one Judge; (4) During performance discussions which took place in April and May of 2005 failed to specifically identify needed areas of improvement; and (5) in May of 2005 attempted to demand that he affirm what he believed to be untrue statements regarding his performance.
>
> As redress for the above alleged discrimination, the aggrieved seeks re-instatement with back pay; assurance of no reprisal by management; removal of any and all negative performance appraisals from his personnel file; and first consideration for any and all developmental opportunities which arise.

(docket # 13, Ex. J at 8).

On June 23, 2005, Hearing Office Director Susan J. Gilbert issued a twelve-page notice to plaintiff that the Administration had terminated his employment. (docket # 13, Ex. K). The initial paragraph of the notice identified Gilbert's three reasons for terminating plaintiff's "appointment as a Legal Assistant (OA), (Case Technician), GS-986-05" during plaintiff's probationary period as follows:

1. Your unacceptable performance of one of our critical job duties of your trainee position, and your failure to demonstrate acceptable progress toward acquiring the knowledge and skills required for later successful performance as a journeyman Case Technician;

2. Your misrepresentation of the status of pending cases by entering incorrect information into the Case Processing and Management System (CPMS); and

   3.  Your misleading statements to a manager during an investigation.

(*Id.* at 1). Ms. Gilbert's documentation of these charges spans ten pages. (*Id.* at 1-10). The remainder of the employment termination notice advised plaintiff of his appeal rights. Plaintiff was advised of his right to file a complaint through the agency's EEO procedure if he believed that his termination was the result of unlawful discrimination. The notice described the steps plaintiff needed to take to initiate an EEO complaint concerning his termination:

> To initiate this process, you must contact the Civil Rights and Equal Opportunity Staff (312) 575-4020 and choose this complaint procedure within 45 calendar days after the effective date of your termination. An EEO counselor will be assigned to you and will explain your rights under this procedure.

(*Id.* at 10). The notice advised plaintiff of his Merit Systems Protection Board (MSPB) appeal rights (*Id.* at 11), and further stated that if he had questions concerning his rights or applicable procedures, plaintiff or his representative should contact the Center for Human Resources, Employee Relations Team at the telephone number provided. (*Id.*).

   On July 20, 2005, EEO Counselor Lopatka issued his counseling report. (docket # 13, Ex. J at 4-9). The report stated that plaintiff had sought counseling on May 25, 2005. The matters causing plaintiff's complaint were identified as assignment of duties, evaluation/appraisal, reprimand, and harassment (non-sexual). Plaintiff claimed discrimination on the basis of sex (male), religion (Hindu), and race (Indian). Sections 8 and 9 of Lopatka's counseling report showed that plaintiff had not claimed discrimination in the termination ("separation") of his employment or that the termination had been made in retaliation for protected EEO activity. (docket # 13, Ex. J at 4, §§ 8, 9). Lopatka's statement of the "information developed during inquiry" further reinforces that the termination of plaintiff's employment was not the subject of EEO counseling. (*Id.* at 7, §

16 & at 9, Exhibit B to the counseling report).   On August 5, 2005, plaintiff filed a formal EEO complaint.  The complaint states, "[A] copy of the completed EEO Counseling Report outlining the issues and bases in my complaint is attached." (docket # 13, Ex. L).

On September 30, 2005, the Social Security Administration issued its decision dismissing Complaint No. 05-0384-SSA based on plaintiff's election of the remedies provided through the grievance process.  (docket # 1, Ex. 1).  The  Administration's decision began with a review of plaintiff's charge of discrimination:

> You claim that based on your sex (male), religion (Hindu) and race (Indian), you were subjected to harassment, an inappropriate reprimand (i.e. performance memorandum), inequitable assignment of duties and evaluation.  Specifically, from September 2004 to January 2005 management failed to modify your workload as agreed.  From June 2004 to June 2005 you were assigned to do Case Technician work for two judges which regularly resulted in conflicted work orders.   During your April and May 2005 performance discussions management failed to identify needed areas of improvement.  You allege that in May 2005 management demanded that you affirm untrue statements regarding your performance.

The Administration found that the matters plaintiff raised in this complaint were "inextricably intertwined" with matters plaintiff had  raised through the grievance procedure under the collective bargaining agreement.  (*Id.* at 1).  The Administration dismissed plaintiff's complaint "pursuant to 29 C.F.R. § 1614.107(a)(4)" because plaintiff had raised the same "matter" under the negotiated grievance procedure before he filed his formal EEO complaint. (*Id.*).  The Administration's final decision of September 30, 2005, notified plaintiff of his appeal rights, which included the right to file a civil action in federal court within 90 days of his receipt of the Administration's final decision. (*Id.*).  On December 5, 2005, plaintiff filed his *pro se* complaint in this court.

**Discussion**

I.      **Irrevocable Election of the Grievance Procedure For Employment Claims**

Plaintiff had two distinct avenues of relief available to him to challenge alleged acts of employment discrimination by his federal government agency employer. He could either (1) assert and exhaust his claims through the grievance procedure available under the negotiated collective bargaining agreement, or (2) assert and exhaust his claims through the statutory EEO process. Plaintiff could not do both. The Civil Service Reform Act expressly states that an "aggrieved employee" with discrimination claims "may raise the matter under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d). Federal regulations provide that, "A person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise a matter under either part 1614 or the negotiated grievance procedure, but not both." 29 C.F.R. § 1614.301(a); *see Wong v. Barnhart*, No. 05 C 5681, 2006 WL 1719530, at * 1 (N.D. Ill. June 19, 2006). "An employee must make an election of remedies when he is covered by a negotiated grievance procedure permitting allegations of discrimination." *Smith v. Kaldor*, 869 F.2d 999, 1006 (6th Cir. 1989); see *Maddox v. Runyon*, 139 F.3d 1017, 1021 (5th Cir. 1998) (observing that § 7121(d) precludes covered federal employees from pursuing both EEO statutory procedure and a union-assisted negotiated grievance procedure). The reason for allowing only one avenue to be pursued is that an aggrieved person is not allowed to "browse at will through multiple administrative reviews in search of a more favorable outcome." *Economou v. Caldera*, 286 F.3d 144, 150 (2d Cir. 2002).

Plaintiff made an irrevocable election of the grievance remedy. "[I]nitiation of the negotiated grievance procedure is an 'irrevocable election of remedies,' regardless of whether the

complainant ever takes any action after the initial step of filing the administrative complaint." *Wright v. Snow*, No. 03-1692(RBW), __ F. Supp. 2d __, 2006 WL 1663490, at * 6 (D.D.C. June 14, 2006) (quoting *Guerra v. Como*, 176 F.3d 547, 548-49 (D.C. Cir. 1999)); *see Collins v. Snow*, No. 04-74628, 2005 WL 1342979, at * 5 (E.D. Mich. June 2, 2005) ("Plaintiff initially elected to pursue this matter through the negotiated grievance process" and "thus he is bound by that irrevocable election of remedies. . . .") (collecting cases); *see also Wong v. Barnhart*, 2006 WL 1719530, at * 1; 20 C.F.R. § 1614.301(a) ("An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under this part 1614 . . . ."). After making his irrevocable election, plaintiff could not pursue a statutory remedy with regard to the same employment matter. *See Smith v. Kaldor*, 869 F.2d at 1006; *Guerra*, 176 F.3d at 549-50; *see also Johnson v. Peterson*, 966 F.2d 397, 399 (D.C. Cir. 1993); *Vinieratos v. United States*, 939 F.2d 762, 768-69, 772 (9th Cir. 1991); *Taylor v. Dam*, 244 F. Supp. 2d 747, 757 (S.D. Tex. 2003); *Steadman v. Whitman*, No. 01 C 6699, 2002 WL 31473823, at * 5 (N.D. Ill. Nov. 1, 2002) (A plaintiff who failed to appeal the Step II grievance decision "waived the opportunity to raise his discrimination claims in a court action."); *accord Douglas v. Norton*, 167 F. App'x 698, 707 (10th Cir. 2006) ("Once an employee elects a certain procedure, it is irrevocable and the employee must exhaust the remedies provided by that procedure."); *Smith v. O'Keefe*, No. H-03-5900, 2006 WL 2167716, at * 5 (S.D. Tex. July 31, 2006) (collecting cases). Plaintiff abandoned the grievance at the Step II appeal stage.

The Administration dismissed all plaintiff's claims in Complaint No. 05-0384-SSA based on plaintiff's election of remedies "pursuant to 29 CFR § 1614.107(a)(4)"[4] because plaintiff had raised the same "matter" under the negotiated grievance procedure before filing a formal complaint. (docket # 1, Ex. 1). The court's focus in determining whether plaintiff's grievance and his subsequent EEO complaint involved the same "matter" is on the underlying employment action at issue, not on the plaintiff's legal theories or remedies:

> Put otherwise, a request, a second request, or even repeated requests embracing the same basic accommodation for the same basic condition cannot be viewed as a different "matter". Attempting to distinguish between filings based on the relief sought, such as a request for compensatory damages in the EEO complaint misses the mark: whatever the scope of the definition of the term "matter," minimally, it must have some bearing to the underlying employment action and rights at issue, as distinct from being governed solely by the remedy sought.

*Guerra*, 176 F.3d at 551; *see Giove v. United States Dep't of Transp.*, No. 01-D-1567 CBS, 2005 WL 2293655, at * 4 (D. Colo. Sept. 16, 2005) (Courts considering this issue have "tended to construe the term 'matter' to encompass more than a legal claim and instead to encompass the 'underlying action' or the 'topics' raised." (citations and internal quotations omitted); *Wright v. Snow*, No. 02-7615(TPG), 2004 WL 1907687, at * 5 (S.D.N.Y. Aug. 25, 2004) ("Every court that has considered the issue has concluded that the word 'matter' in 5 U.S.C. § 7121 and 29 C.F.R. § 1614.301 refers to *conduct* underlying the plaintiff's claim, as opposed to the *legal allegations* of the claim.") (emphasis in original) (collecting cases); *Van Houten v. Gober*, No. Civ. A. 98-270, 1998 WL 966021, at * 5 (E.D. Pa. Nov. 10, 1998) ("The term 'matter' as used in 5 U.S.C. § 7121(d), means the underlying employment action" and "[t]wo complaints refer to the same 'matter' if the

---

[4] 29 C.F.R. § 1614.107(a)(4) states that, "Prior to a request for a hearing in a case, the agency shall dismiss an entire complaint: . . . (4) Where the complainant has raised the matter in a negotiated grievance procedure that permits allegations of discrimination . . . ."

disputed personnel action at the root of the employee's complaint is the same, regardless of the legal theory on which the action is challenged."). A comparison of plaintiff's grievance and his EEO complaint reveals that they involved the same matter. The grievance and complaint asserted that plaintiff had been subjected to unlawful discrimination in the assignment of his job duties and in the evaluations of his work performance. Accordingly, I recommend that defendant's motion for summary judgment be granted and that judgment be entered in defendant's favor on all plaintiff's claims, with the exception of plaintiff's employment termination claims.

## II.     Employment Termination Claims

Plaintiff's complaint alleges that the termination of his employment was the result of unlawful discrimination on the basis of race, color, sex and religion. Defendant's motion seeks dismissal of these claims on the basis of plaintiff's failure to exhaust his available administrative remedies before filing this lawsuit. (docket # 12 at 1). Exhaustion of administrative remedies is a statutory prerequisite to plaintiff's ability to maintain an employment discrimination suit under Title VII. *See Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385, 393 (1982). "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown v. General Serv. Admin.*, 425 U.S. 820, 833 (1976)); *Ferguson v. Snow*, 185 F. App'x 456 (6th Cir. 2006). There is no record evidence that plaintiff pursued, much less exhausted, any of the administrative avenues available to him to challenge defendant's termination of his employment. Dismissal without prejudice is generally the appropriate remedy for a Title VII claim filed

prematurely, before administrative remedies are exhausted and a right-to-sue letter secured. *See e.g.*, *Hoover v. Timken Co.*, 30 F. App'x 511 (6th Cir. 2002). Accordingly, I recommend that plaintiff's Title VII employment termination claims be dismissed without prejudice for his failure to exhaust administrative remedies and obtain the necessary right-to-sue letter.

### Recommended Disposition

For the foregoing reasons, I recommend that defendant's motion for summary judgment be granted, and that judgment entered in defendant's favor on all plaintiff's claims with the exception of plaintiff's claims based on the termination of his employment. I recommend that plaintiff's employment termination claims be dismissed without prejudice because plaintiff did not exhaust his available administrative remedies before filing this lawsuit.

Dated:   October 27, 2006                     /s/  Joseph G. Scoville
                                              United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).